# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### ROCK HILL DIVISION

| | | |
|---|---|---|
| JOHN R. WOOD, | ) | |
| | ) | |
| Petitioner, | ) | No. 0:12-cv-3532-DCN |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| BRYAN P. STIRLING, Commissioner, | ) | |
| South Carolina Department of Corrections; | ) | |
| and WILLIE D. DAVIS, Warden, Kirkland | ) | |
| Reception and Evaluation Center, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner John R. Wood ("Wood") is a death row inmate in the custody of the South Carolina Department of Corrections ("SCDC"). He filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 19, 2013. This matter is before the court for consideration of Wood's objections to the Report and Recommendation ("R&R") of United States Magistrate Judge Paige J. Gossett, who recommends granting respondents' motion for summary judgment and granting in part and denying in part Wood's motion for an evidentiary hearing and to expand the record. For the reasons stated below, the court adopts the R&R, grants the respondents' motion for summary judgment, and grants in part and denies in part Wood's motion for further factual development.

## I. BACKGROUND AND PROCEDURAL HISTORY

Wood was convicted by a jury and sentenced to death for the murder of Trooper Eric Nicholson ("Nicholson"). The R&R ably recites the facts of this case, as summarized by the Supreme Court of South Carolina. In short, Wood was driving a moped on I-85 in the Greenville area, and Nicholson informed the dispatcher that he was

1

going to pull Wood over. Several witnesses observed the moped, followed by a trooper with activated lights and sirens, take the off-ramp to leave the interstate and turn right onto a frontage road. Nicholson sped up to drive alongside the moped and then veered to the left and stopped at a raised median to block the moped's path. The moped came to a stop close to the driver's side window of Nicholson's car.

Upon stopping, Wood stood up over the moped, fired several shots in the driver's side window, turned the moped around, and fled. Officers heard Nicholson scream on the radio, went to the scene, and found that Nicholson had been shot five times. Both of Nicholson's pistols were secured in their holsters, and eight shell casings were found at the scene. While fleeing, Wood drove into a parking lot and jumped into the passenger's seat of a Jeep. The police began pursuing the Jeep, and Wood opened fired on the officers. One officer was struck in the face by a bullet fragment, but he survived the injury. Wood then abandoned the Jeep and hijacked a truck but was eventually stopped and taken into custody.

Wood was indicted in May 2001 in Greenville County for murder and possession of a weapon during the commission of a violent crime. ECF No. 45-3 at 74. At trial, Wood was represented by attorneys John I. Mauldin, James Bannister, and Rodney Richey (referred to collectively or individually as "trial counsel"). On February 11, 2002, the jury found Wood guilty of both charges and recommended a death sentence on the murder charge, finding the aggravating factor of murdering a state law enforcement officer during the performance of his official duties. ECF Nos. 42-7 at 20; 43-3 at 25–27. On February 16, 2002, the state circuit court sentenced Wood to death. ECF No. 43-3 at 30.

Wood appealed his case to the Supreme Court of South Carolina. On December 6, 2004, the Supreme Court of South Carolina affirmed Wood's convictions and sentence. ECF No. 43-5 at 107. Wood petitioned for rehearing, which the court denied on January 20, 2005. ECF No. 43-5 at 108. Then on July 28, 2005, Wood filed a pro se application for post-conviction relief ("PCR"). ECF No. 43-5 at 112. The PCR court appointed attorneys to handle Wood's PCR proceeding. On February 9, 2007, Wood filed an amended PCR application. ECF No. 40-15. The PCR court held an evidentiary hearing from March 6–8, 2007, ECF Nos. 44-1 at 34 through 44-7 at 8, and on December 19, 2007, the PCR court dismissed Wood's application, ECF Nos. 45-2 at 92 through 45-3 at 73. Wood filed a motion to reconsider, which the PCR court denied. ECF No. 45-4 at 21, 55. Wood then filed a petition for writ certiorari with the Supreme Court of South Carolina. ECF No. 40-6. After the petition was fully briefed, the Supreme Court of South Carolina denied Wood's petition on November 2, 2012, ECF No. 40-16, and issued a remittitur on November 26, 2012, ECF No. 40-8.

On December 7, 2012, Wood commenced this action by filing a motion for stay of execution and a motion to appoint counsel. ECF No. 1. Wood then filed his petition for writ of habeas corpus under § 2254 on September 19, 2013. ECF No. 85. Wood contemporaneously filed a motion to stay his habeas proceeding while he pursued his unexhausted claims in state court. ECF No. 86. The court granted the motion to stay on October 23, 2013. ECF No. 93.

On September 26, 2013, Wood filed a second PCR application in state court. ECF No. 134-1. On July 19, 2016, the PCR court dismissed the application as untimely and improperly successive under state law. ECF No. 135-1. Wood moved to alter or

amend the court's order, ECF No. 135-2, and the PCR court denied that motion on August 3, 2017, ECF No. 135-3. This ended Wood's state court proceedings, and the court lifted the stay in Wood's habeas proceeding on August 29, 2017. ECF No. 126.

Respondents filed their motion for summary judgment on November 2, 2017. ECF No. 136. Wood filed his response and traverse on December 17, 2017, ECF No. 150, and respondents replied on January 7, 2018, ECF No. 154. In addition, on December 17, 2017, Wood filed a motion for an evidentiary hearing and an opportunity to expand the record with respect to Grounds Four, Five, Seven, and Ten. ECF No. 151. Respondents responded on January 2, 2018, ECF No. 153, and Wood replied on January 16, 2018, ECF No. 160. On October 1, 2018, the magistrate judge issued her report recommending that respondents' motion for summary judgment be granted and her order granting in part and denying in part Wood's motion for an evidentiary hearing and expansion of the record.[1] Wood filed timely objections to the R&R and order on November 14, 2018. ECF No. 193. Respondents replied to Wood's objections on November 28, 2018. ECF No. 194. Wood's claims are now ripe for resolution.

## II.  STANDARDS

### A.  Magistrate Judge Review

#### 1.  R&R

The magistrate judge makes only a recommendation to the court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight,

---

[1] The R&R granted in part Wood's motion for further factual development because the R&R considered the testimony of SLED agent Gene Donohue, which was not part of the state record and was attached to Wood's traverse. Donohue's testimony was provided in the case <u>State v. John Richard Wood and Karen Pittman McCall</u>, which was a separate trial that took place in Anderson County. ECF Nos. 150 at 46; 150-2.

and the responsibility to make a final determination remains with the court.  Id. at 270-71.

The court may "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge . . . or recommit the matter to the

magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with

making a de novo determination of any portion of the R&R to which a specific objection

is made.  Id.  When a party's objections are directed to strictly legal issues "and no

factual issues are challenged, de novo review of the record may be dispensed with."

Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted).  Analogously, de

novo review is unnecessary when a party makes general and conclusory objections

without directing a court's attention to a specific error in the magistrate judge's proposed

findings.  Id.

### 2.  Order

Magistrate judges have "the authority to hear and determine any pretrial matter

pending before the court" except for dispositive motions.  United States v. Benton, 523

F.3d 424, 430 (4th Cir. 2008).  A party may object to a magistrate judge's order on a

nondispositive matter within 14 days of service of the order.  Fed. R. Civ. P. 72(a).  The

district court reviews such orders for clear error.  28 U.S.C. § 636(b)(1)(A); Springs v.

Ally Fin. Inc., 657 F. App'x 148, 152 (4th Cir. 2016).

### B.  Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  "By its very terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### C. Habeas Corpus

#### 1. Standard for Relief

This court's review of Wood's petition is governed by 28 U.S.C. § 2254, which was amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1213. See Lindh v. Murphy, 521 U.S. 320 (1997). Section 2254(a) provides federal habeas jurisdiction for the limited purpose of establishing whether a person is "in custody in violation of the Constitution or laws or treaties of the United States." This power to grant relief is limited by § 2254(d), which provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses contained in § 2254(d)(1) are to be given independent meaning—in other words, a petitioner may be entitled to habeas corpus relief if the state court adjudication was either contrary to or an unreasonable application of clearly established federal law.

A state court decision can be "contrary to" clearly established federal law in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (plurality opinion). Section 2254(d)(1) restricts the source of clearly established law to holdings of the Supreme Court as of the time of the relevant state court decision. See id. at 412; see also Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005).

With regard to "unreasonable" application of the law, a state court decision can also involve an "unreasonable application" of clearly established federal law in two ways: (1) "if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where should apply." Williams, 529 U.S. at 407.

It is important to note that "an unreasonable application of federal law is different from an incorrect application of federal law," and that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 410–11 (emphasis in original).  Indeed, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable."  <u>Humphries v. Ozmint</u>, 397 F.3d 206, 216 (4th Cir. 2005) (quoting <u>Williams</u>, 529 U.S. at 410).

### 2.  Procedural Default

A petitioner seeking habeas relief under § 2254 may only do so once the petitioner has exhausted all remedies available in state court.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court."  <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by <u>United States v. Barnette</u>, 644 F.3d 192 (4th Cir. 2011).  Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  <u>Martinez v. Ryan</u>, 566 U.S. 1, 9 (2012); <u>see also</u> <u>Lawrence v. Branker</u>, 517 F.3d 700, 714 (4th Cir. 2008) (explaining that generally "[f]ederal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred.").

However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions."  <u>Martinez</u>, 566 U.S. at 10.  One such exception occurs when a

prisoner seeking federal review of a defaulted claim can show cause for the default and prejudice from a violation of federal law.  Id.  "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Id. at 10.  In order to establish such cause, the following elements must be established:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013) (quoting Martinez, 566 U.S. at 14, 17–18).

A claim is "substantial" if it has "some merit."  Martinez, 566 U.S. at 14.

### D.  Ineffective Assistance of Counsel

A petitioner asserting ineffective assistance of counsel must demonstrate that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the petitioner.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient when "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  In assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  "Judicial scrutiny of counsel's performance must be highly deferential[,] and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. When considering prejudice in the context of a death penalty case, "the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Id. at 695.

Because "[s]urmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult," Harrington v. Richter, 562 U.S. 86, 105 (2011). The Supreme Court has explained that "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential.'" Id. (quoting Strickland, 466 at 689). Therefore, a court's review of an ineffective assistance counsel claim under the § 2254(d)(1) standard is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

### III.   DISCUSSION

Wood raises two general objections to the R&R and various specific objections to Grounds Three, Four, and Five.

#### A.  General Objections

Wood makes two "general objections" to the R&R. Objections must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003) (quoting

<u>United States v. 2121 E. 30th Street</u>, 73 F.3d 1057, 1060 (10th Cir. 1996)).  Although

Wood labels his initial objections as "general," the court finds that they are specific

enough to warrant review.

### 1.  Standard of Review

Wood first objects to the standard of review employed by the R&R.  He argues

that the R&R's discussion of <u>Harrington v. Richter</u>, 562 U.S. 86 (2011), erroneously

suggests that the standard of review enunciated in <u>Richter</u> should apply to all § 2254(d)

cases.

After discussing the general principles of the § 2254 standard of review, the R&R

notes that "review of a state court decision under the AEDPA standard does not require

an opinion from the state court explaining its reasoning."  ECF No. 190 at 22 (citing

<u>Richter</u>, 562 U.S at 98).  The R&R went on to explain that

> Pursuant to § 2254(d), a federal habeas court must (1) determine what
> arguments or theories supported or could have supported the state court's
> decision; and then (2) ask whether it is possible that fairminded jurists could
> disagree that those arguments or theories are inconsistent with the holding
> of a prior decision of the United States Supreme Court.  <u>Id.</u> at 102.  "If this
> standard is difficult to meet, that is because it was meant to be."  <u>Id.</u>  Section
> 2254(d) codifies the view that habeas corpus is a "'guard against extreme
> malfunctions in the state criminal justice systems,' not a substitute for
> ordinary error correction through appeal."  <u>Id.</u> at 102–03 (quoting <u>Jackson
> v. Virginia</u>, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in
> judgment)).

ECF No. 190 at 23.[2]  Wood argues that the R&R's explanation of this law suggests that

the magistrate judge believes that the <u>Richter</u> standard should apply in all § 2254(d)

cases, as opposed to just in cases in which there are state court decision or decisions

containing no reasoning.  Wood contends that <u>Richter</u> does not apply here because while

---

[2] The "<u>id.</u>" citations in this paragraph refer to <u>Wilson v. Sellers</u>, 138 S.Ct. 1188 (2018);
however, this law and accompanying quotes are found in <u>Richter</u>, 562 U.S. at 102–03.

the Supreme Court of South Carolina's denial of certiorari contained no reasoning, the PCR court did provide its reasoning in 94-page order. Wood explains that <u>Wilson v. Sellers</u>, 138 S. Ct. 1188 (2018), addressed this exact point, namely that the <u>Richter</u> standard should only apply in cases in which no reasoned state court decision exists.

Wood's description of the state of the law on this issue is accurate. In <u>Wilson</u>, the Supreme Court considered whether federal habeas law should use the "look through" approach as opposed to a "could have supported" approach when a higher court affirms or denies the lower court decision without providing its reasoning. 138 S. Ct. at 1193. The "look through" approach involves the federal court assuming that the summary higher court opinion rested on the grounds given in a lower court opinion, while the "could have supported" approach requires the federal court to identify the bases that it believed reasonably could have supported the higher court opinion. <u>Id.</u> The Supreme Court held that generally "federal habeas law employs a 'look through' presumption." <u>Id.</u>

In squaring this holding with <u>Richter</u>, the Court first explained that <u>Richter</u> "did not directly concern the issue before" the court because there was no lower court opinion to which a court could look through. In <u>Richter</u>, the defendant brought his federal constitutional claim for the first time in the California Supreme Court, as permitted by state law, and the California Supreme Court summarily denied Richter's petition. Therefore, in <u>Richter</u>, the court had to use the "could have supported approach" because there was <u>no</u> reasoned state court opinion. Next, the court clarified that <u>Richter</u> still contemplated the possibility of applying <u>Ylst v. Nunnemaker</u>, 501 U.S. 797 (1991), a case in which the Court employed the "look through" approach, suggesting that <u>Richter</u>

did not abolish the "look through" approach. Finally, the Court explicitly rejected the principle that "Richter's 'could have supported' framework [should] apply even where there is a reasoned decision by a lower state court." Id. at 1195. In sum, a federal court should only use the "could have supported" framework articulated in Ritcher when there is a higher court opinion with an unexplained decision on the merits and no lower court opinion to which the court can "look through."

While Wood's explanation of the law is correct, he fails to explain how the R&R misapplied the law. He only points to one portion of the R&R in which he argues that the magistrate judge misapplied this standard. Wood contends that the R&R's finding about trial counsel's performance contradicts the PCR court's finding that trial counsel was deficient for failing to object to inadmissible prison condition testimony. Wood argues that this suggests that the R&R did not "look through" to the PCR court's reasoning but instead substituted its own reasoning based on the "could have supported" approach.

The portion of the R&R cited by Wood discusses whether one of the arguments in Ground Five had been procedurally defaulted. The argument was that trial counsel's failure to object to the Solicitor's reference to evidence about general prison conditions during his closing argument constituted ineffective assistance of counsel. This claim was not raised in Wood's first PCR application that was considered on the merits but was raised in his second PCR application, which was dismissed as untimely and improperly successive, meaning that the claim is procedurally defaulted. In order to excuse the procedural default under Martinez, Wood must show that his underlying ineffective assistance of counsel claim—that trial counsel's failure to object to the Solicitor's closing argument constitutes ineffective assistance of counsel—is substantial. This requires

Wood to show that trial counsel's failure to object constitutes deficient performance, and that the deficient performance prejudiced Wood. In considering whether trial counsel's performance was deficient, the R&R stated that:

> In its discussion above regarding Ground Three, this court determined that the PCR court did not unreasonably err in its consideration of this standard [regarding the admissibility of prison conditions] under <u>Strickland</u> and its resulting finding that trial counsel's failure to object to evidence of prison conditions did not prejudice Wood. Wood has not shown that the evidence of conditions of confinement presented during the sentencing phase was impermissible. Thus, the court cannot find that the solicitor's comments on this topic in his closing statement were based on inadmissible evidence.

ECF No. 190 at 51.

Wood takes issue with the R&R's description of Ground Three regarding trial counsel's performance and its application to Ground Five. In Ground Three, Wood alleged that his trial counsel was ineffective for failing to object to evidence of general prison conditions. That claim was raised in Wood's first PCR application and was therefore considered by the PCR court. The PCR court concluded that trial counsel was deficient for failing to object to this evidence, but that the deficient performance did not prejudice Wood. Wood argues that this finding contradicts the R&R's conclusions that "Wood has not shown that the evidence of conditions of confinement presented during the sentencing phase was impermissible" and that "the court cannot find that the solicitor's comments on this topic in his closing statement were based on inadmissible evidence." <u>Id.</u>

However, the problem with Wood's argument is that the PCR court made no specific findings about why trial counsel was deficient for failing to object to the evidence. Instead, the PCR court summarily concluded that "counsel were [sic] deficient for not objecting to the evidence." ECF No. 45-3 at 70. The PCR court provided no

reasoning as to why trial counsel was deficient for failing to object. The PCR court's earlier discussion about South Carolina law regarding the impropriety of evidence of conditions of confinement, which is discussed in greater detail below, suggests that the PCR court relied on that law in finding trial counsel deficient. But the PCR court did not explicitly find that the evidence of conditions of confinement was inadmissible or impermissible.[3] As such, the R&R did not contradict the PCR opinion when it concluded that "Wood has not shown that the evidence of conditions of confinement presented during the sentencing phase was impermissible" and that the R&R could not "find that the solicitor's comments on this topic in his closing statement were based on inadmissible evidence." ECF No. 190 at 51.

As mentioned above, Wood fails to direct to the court's attention to any other portion of the R&R in which the magistrate judge allegedly misapplied the standard of review. Moreover, a review of the R&R indicates that the R&R did apply the correct standard of review when applicable, namely, when a claim was raised in Wood's first PCR application and the PCR court considered the claim in its opinion. For example, in Ground Three, the R&R does consider the reasoning of the PCR court and cites to the PCR opinion, indicating that the R&R "looked through" the summary Supreme Court of South Carolina denial of certiorari to the PCR court opinion. See ECF No. 190 at 33–37.

---

[3] Indeed, as the PCR court acknowledged, all but one of the South Carolina cases specifically opining on the admissibility of this evidence were not decided until after Wood's trial took place. ECF No. 45-3 at 62 ("The reason this issue [about evidence on general prison conditions] is problematic stems from four South Carolina cases—one that was in existence prior to this case and three that were handed down after [Wood]'s trial."). It is unclear to what extent the PCR court relied on the cases decided after Wood's trial and whether they played a role in the PCR court's holding that trial counsel was deficient for failing to object to the evidence because the PCR court simply does not provide reasoning for its conclusion.

The R&R explicitly said it was doing so.  Id. at 30 ("In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Wood's petition.").  The same is true for the claim in Ground Five that was raised in Wood's first PCR application about references to prison hierarchy in the Solicitor's closing argument.  In considering this claim, the R&R summarized the PCR's decision and analyzed its reasoning.  Id. at 41–42.

However, many of Wood's claims were not raised until his second PCR application.  See, e.g., ECF No. 190 at 43 ("Wood has pursued his state remedies with regard to the remaining portions of Ground Five through his second PCR application, but Wood did not raise these claims in his original PCR application and, therefore, they are procedurally defaulted."); id. at 72 ("Ground Seven was raised only in the second PCR proceeding and is, therefore, exhausted but defaulted.").  Because Wood's second PCR application was dismissed as untimely and improperly successive, the PCR court did not consider the claims in that application on the merits.  Therefore, with regard to the newly raised claims, the magistrate judge could not "look through" to the PCR court's opinion because there is no PCR court opinion that considered the claims.  Instead, the R&R determined that the claims were procedurally defaulted and conducted an analysis to see if the procedural default should be excused under Martinez.  In that analysis, the standard of review discussed here is inapplicable.  In sum, the court finds that the R&R did not improperly apply the standard of review.

## 2. Evidentiary hearing

Wood also generally objects to the magistrate judge's order denying Wood's request for an evidentiary hearing. Wood filed a motion for an evidentiary hearing and an opportunity to expand the record with respect to Grounds Four, Five, Seven, and Ten. These grounds contain procedurally barred claims, and Wood sought an evidentiary hearing and record expansion to prove facts that establish cause and prejudice to excuse the procedural default. As a reminder, because the magistrate judge issued an order on this motion, as opposed to a R&R, the court reviews the order only for clear error. 28 U.S.C. § 636(b)(1)(A).

Section 2254(e) "generally bars evidentiary hearings in federal habeas proceedings initiated by state prisoners." McQuiggin v. Perkins, 569 U.S. 383, 395 (2013); see also 28 U.S.C. § 2254(e)(2) ("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless" certain conditions apply). It is within a district court's discretion to permit an evidentiary hearing so that a petitioner can establish cause and prejudice to excuse his procedural default. Cristin v. Brennan, 281 F.3d 404, 417 (3d Cir. 2002). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); see also Fielder v. Stevenson, 2013 WL 593657, at *3 (D.S.C. Feb. 14, 2013) ("In determining whether to expand the record, a federal court must consider whether doing so would enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

Wood argues that the R&R erred by inconsistently denying his request for an evidentiary hearing and then faulting Wood for failing to offer evidence outside of the record to prove his claims. Wood cites to various portions of the R&R in which the magistrate judge faulted him for failing to offer evidence. The court will discuss each portion in turn.

As for Ground Four, Wood cites to the portion of the R&R that found that Wood's claim was procedurally barred absent a showing of cause and prejudice. See ECF No. 193 at 3 (citing ECF No. 190 at 37). The R&R correctly noted that Ground Four is procedurally defaulted, and that because Ground Four is not an ineffective assistance of counsel claim, Wood cannot use Martinez to excuse its procedural default. See Martinez, 566 U.S. at 9 ("recognizing a narrow exception" to procedural default where "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."). As such, in order to excuse the procedural default of Ground Four, Wood must show cause for the procedural default, which must be that an "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Wood seeks an evidentiary hearing to establish cause, but the issue is that Wood has not even alleged a cause for the procedural default of Ground Four. He only discussed Martinez and the effectiveness of PCR counsel to excuse procedural default, but as discussed above, the procedural default of Ground Four cannot be excused by Martinez. Indeed, the R&R faulted Wood for "failing to express[ ] any particular cause of his default." ECF No. 190 at 38. Wood is not entitled to an evidentiary hearing simply because his claim is procedurally defaulted.

18

Instead, he must allege facts as to the cause of his default that, if proven true, would entitle him to habeas relief. <u>Schriro</u>, 550 U.S. at 474. Because Wood did not do so, the R&R did not clearly err by denying an evidentiary hearing to excuse the procedural default of Ground Four.

For Ground Five, Wood cites to a portion of the R&R in which the R&R held that Wood did not offer any evidence regarding trial counsel's decision to not object to a portion of the Solicitor's closing argument. <u>See</u> ECF No. 193 at 3 (citing ECF No. 190 at 52, 53, 57, 58). Similarly, for Ground Seven, Wood cited to the portion of the R&R that concluded that Wood did not show that trial counsel's opening statement was not a reasonable trial tactic. <u>See</u> <u>id.</u> (citing ECF No. 190 at 76). These portions of the R&R provided the reasoning for the R&R's conclusion that Wood was unable to show that trial counsel's performance was deficient. With Wood unable to show that trial counsel's performance was deficient, the R&R found that Wood could not establish substantial ineffective assistance of counsel claims, and as a result the claims' procedural default could not be excused.

Wood argues that an evidentiary hearing is warranted for this precise reason—to determine why trial counsel made these decisions and whether that decision-making rendered trial counsel's performance deficient. However, the R&R clarified that even if Wood presented evidence about trial counsel's decision on both of these grounds to show that their performance was deficient, Wood has still failed the second prong of an ineffective assistance of counsel claim by failing to show any resulting prejudice. As such, the R&R concluded, Wood failed to show that his underlying ineffective assistance of counsel claims are substantial because he has not alleged facts that, if proven true at an

evidentiary hearing, would prove an ineffective assistance of counsel claim and entitle him to habeas relief. Therefore, the R&R denied Wood's request for an evidentiary hearing.

The court finds no clear error in this conclusion. In both Grounds Five and Seven, Wood failed to explain how his trial counsel's performance prejudiced him. In Ground Five, Wood argued that he was prejudiced by all of the alleged improper comments in the Solicitor's closing argument, and that the jury's lengthy deliberations indicate that the case was close. ECF No. 150 at 25–26. However, as discussed in greater detail below, Strickland's requirement of prejudice involves showing that "there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695. Wood has made no mention of the balancing of the aggravating and mitigating circumstances, and as such, he failed to show prejudice. As for Ground Seven, Wood simply asserted that "[t]rial counsel's improper opening statement and subsequent failure to object to Solicitor Ariail's argument in summation and the improper juror forms were unreasonable and prejudicial." ECF No. 150 at 42. Alleging prejudice in such a conclusory manner is insufficient to establish a substantial ineffective assistance of counsel claim. As such, the court finds that Wood did not sufficiently allege facts to show that he was prejudiced by trial counsel's performance, which would establish an ineffective assistance of counsel claim and entitle him to habeas relief. The court finds no clear error in the R&R's denial of an evidentiary hearing on these claims.

Wood does not cite to any portions of the R&R discussing Ground Ten in arguing that the R&R faulted him for failing to provide evidence. Wood's final citation, ECF No. 190 at 92, cites to a portion of the R&R in which the magistrate judge explains that Wood could have provided evidentiary support through affidavits attached to his petition to show that his default should be excused, but that Wood failed to do so. The court finds no clear error with this conclusion

## B. Specific Objections

Wood also brings several specific objections with regards to the R&R's reasoning and conclusions on Grounds Three, Four, and Five. The court addresses each in turn.

### a. Ground Three

In Ground Three, Wood alleges that his trial counsel was ineffective for failing to object to the introduction of evidence about conditions of confinement during the sentencing phase of his trial. In order to track the procedural history of this claim and the various decisions on it, the court will first review the evidence related to this issue that was presented at trial. The court will then summarize the PCR court's consideration of Wood's ineffective assistance of counsel claim that Wood raised as a result of trial counsel failing to object to the evidence. Next, the court will review Wood's argument regarding this claim in his habeas petition as well as the R&R's analysis of the claim. Finally, the court will consider Wood's objections and conduct its own analysis of the issue.

#### i. Facts

Evidence about conditions of confinement was first introduced by the state. The state called Jimmy Sligh, Classification Director for the South Carolina Department of

Corrections, "to establish what life in prison without parole means and to have a discussion as to the difference between life in prison without parole versus the punishment of death." ECF No. 42-7 at 116. Trial counsel did not object to Sligh being called as a witness. Id. at 117. The R&R recounts the highlights of Sligh's testimony in detail. Sligh agreed that "prison is kind of like a mini city," id. at 122, and testified about the various accommodations in prisons. He also explained that inmates in general population have greater freedom and contact visitation, as opposed to inmates on death row who have little freedom and only noncontact visitation.

On cross-examination, Sligh confirmed that Wood would be classified at the highest level of security classifications along with "other murderers [and rapists]." ECF No. 42-8 at 15–16. Sligh agreed with trial counsel that prison is "a tough place with tough people." Id. at 16. On redirect, Slight testified that "the great majority" of inmates make it though their time in prison without any violent incidents and that a defendant's physical characteristics are taken into account when assigning him to a cell so that prison officials do not "put a 6'8", 300 pound guy in with a 5'2" little guy." Id. at 23. On recross, Sligh confirmed that the Department of Corrections will isolate a prisoner if there is a problem with the prisoner. Id. at 24.

Trial counsel then called James Aiken ("Aiken") to testify as an expert on "future prison adaptability and risk assessment of prisoners." ECF No. 43-1 at 52, 56–57. Aiken testified that a person's behavior during prior incarceration can help predict his future prison behavior, and that there was a lack of any violent instances in Wood's past prison experience. Aiken then described differences between general population and death row, explaining that on death row "you are locked into a single cell by yourself [so] you get

peace and quiet" as opposed to general population, where "you are dealing with the security threat groups." Id. at 61. Aiken explained that these "security threat groups" consist of "predators" who "are constantly trying to take control of you as well as the prison population." Id. Finally, Aiken explained that Wood would be an "easier target . . . to be suscepted [sic] to this type of predator environment" due to his size, weight, and age. Id. at 63–64. The Solicitor did not cross-examine Aiken.

### ii. PCR Order

During Wood's PCR proceeding, Wood argued that trial counsel's failure to object to the evidence about prison conditions constituted ineffective assistance of counsel. In its order, the PCR court began its consideration of the claim by recounting the evidence described above. It then summarized several South Carolina cases that discuss the impropriety of evidence on conditions of confinement during the penalty phase of a capital trial. Next, the PCR court reviewed the relevant law on ineffective assistance of counsel, including the standards used to evaluate a Strickland claim. In its application of this law, the PCR court found that trial counsel was deficient for not objecting to the evidence on conditions of confinement but concluded that Wood's claim failed because Wood was not prejudiced by his trial counsel's failure to object to the evidence.

The PCR court began its prejudice analysis by weighing the aggravating and mitigating evidence. The court explained that the nature of Wood's crime was "extremely aggravated" given the murder of a police officer as well as Wood's "subsequent wild chase" during which he wounded another police officer. ECF No. 45-3 at 71. In addition, the PCR court noted that Wood had a prior record, had been to prison

before, and that the victim impact evidence was "particularly moving." Id. In comparison, the PCR court explained, there was little mitigation evidence, including no testimony from family members and "relatively mild" testimony about Wood's mental health. Id. The PCR court also noted that rebuttal testimony about Wood's mental health simply concluded that Wood was antisocial.

The PCR court then considered the presentation of the evidence of conditions of confinement. The PCR court explained that

> [t]hrough cross of Sligh and presentation of James Aiken, the defense elicited how tough prison is, how [Wood] would be far more susceptible to danger in general population than on death row, and how [Wood] would likely be at the mercy of predator groups inside the general population of prison given his small stature and older age.

Id. The PCR court went on to say that "[b]oth sides fully joined the issue and both sides were able to make headway[,]" resulting in "relative equality of presentation by both sides on the issue of conditions of confinement." Id. The PCR court then concluded that "[g]iven the overwhelming evidence in aggravation and the limited evidence in mitigation, admission of both the State's and defense's evidence of conditions of confinement does not establish Strickland prejudice." Id.

### iii. Wood's Argument and the R&R's Holding

Wood raised his ineffective assistance of counsel claim again in his habeas petition, ECF No. 85 at 5, and in his traverse in response to defendants' motion for summary judgment, ECF No. 150 at 2–9. In his traverse, Wood argued that the PCR court unreasonably applied Strickland to find that Wood was not prejudiced by the introduction of evidence regarding prison conditions. Wood explained that both federal and South Carolina law require a capital sentencing decision to be based on evidence related to the defendant and to the crime, and that it is improper to inject an arbitrary

24

factor, like evidence on general prison conditions, into the decision-making process. Wood then contended that the introduction of evidence about general prison conditions is an especially grave error pursuant to State v. Burkhart, 640 S.E.2d 450 (S.C. 2007), and that the PCR court did not take this into account when it found that there was "relative equality of presentation by both sides on the issue of conditions of confinement." ECF No. 150 at 7. Finally, Wood argued that the PCR court failed to consider in its prejudice analysis the prolonged amount of time during which the jury deliberated over Wood's sentence.

In considering these arguments, the R&R found that, pursuant to federal law, admission of evidence of conditions of confinement do not per se prejudice a defendant, but instead, the totality of the evidence must be considered to determine prejudice. The R&R concluded that the PCR court properly engaged in such an analysis when it considered the aggravating and mitigating evidence. The R&R then found that "it is reasonable to conclude that [the PCR court] recognized the relevance" of Burkart given its discussion of the case and went on to discuss the impact of Bowman v. State, 809 S.E.2d 232 (S.C. 2018), a recent case that clarified Burkhart and held that the introduction of evidence about conditions of confinement does not automatically support a finding of prejudice. ECF No. 190 at 36. Finally, in considering Wood's argument about the length of jury deliberations, the R&R stated that "Wood's contention appears to be that the jury found the evidence more equally weighted than the PCR court, so the PCR court's determination was unreasonable." Id. at 37. The R&R then explained that "Wood neither asserts nor points to any evidence that the jury's indecisiveness resulted from admission of evidence of conditions of confinement or that it was due to any

mitigating evidence that the PCR court failed to consider in its analysis." Id. As a result, the R&R concluded, Wood did not connect the erroneous admission of prison condition evidence to any perceived prejudice.

### iv. Discussion

The court now considers Wood's objections to the R&R's analysis of this claim. As a reminder, the court reviews the portions of the R&R to which Wood objects de novo. In doing so, the court reviews the PCR court's opinion to determine whether, pursuant to § 2254, the PCR court unreasonably applied Strickland. Because the court is employing the deferential standards of review under both Strickland and § 2254, the court's review is "doubly deferential." Knowles, 556 U.S. at 123.

Wood first objects to the R&R's finding that "nothing in federal jurisprudence requires a finding that admission of evidence of conditions of confinement prejudiced the defendant." ECF No. 193 at 4 (citing ECF No. 190 at 35). It is unclear why Wood objects to this finding. Indeed, there is nothing within federal law that states that, in the context of a Strickland analysis, a counsel's deficient performance that allowed for the introduction of evidence about prison conditions prejudices a defendant. Instead, Strickland requires a court to "consider the totality of the evidence before the judge or the jury" when determining whether a defendant was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 695. The mere fact that evidence of prison conditions was admitted does not necessitate an automatic finding of prejudice. Instead, the court must consider the evidence of prison conditions in addition to the rest of the evidence presented during sentencing. Wood appears to believe that this statement indicates a misunderstanding of Wood's claim, namely, that the PCR court's application

of Strickland and its prejudice analysis was unreasonable pursuant to South Carolina state law. Yet the R&R simply made this point to show that evidence of conditions of confinement is not per se prejudicial under federal law or Strickland. Instead, the R&R goes on to explain what is required of a Strickland prejudice analysis and concludes that the PCR court properly stated and applied the law on this issue. As such, the court overrules this objection.

Wood next argues that the R&R erroneously failed to determine whether Burkhart factored into the prejudice analysis. As mentioned above, the PCR court summarized the relevant South Carolina law about the introduction of evidence on prison conditions, including Burkhart. In Burkhart, the Supreme Court of South Carolina reversed a death sentence on direct appeal, not on a PCR application, because evidence about general prison conditions was introduced during the penalty phase of the trial. 640 S.E.2d at 453. The court explained that even though both parties introduced this evidence, "this entire subject matter injected an arbitrary factor into the jury's sentencing considerations." Id. at 488. The court reversed the death sentence because, pursuant to S.C. Code Ann. § 16-3-25(c)(1), a jury may not impose a death sentence under the influence of any arbitrary factor.

The R&R concluded that the PCR court's detailed discussion of Burkhart suggested that the PCR court did consider Burkhart in its prejudice analysis. Indeed, while the PCR court did not explicitly reference Burkhart in its prejudice analysis, it did provide a detailed explanation of the case and its holding. However, whether or not the PCR court considered Burkhart in its prejudice analysis is irrelevant, because in Bowman v. State, 809 S.E.2d 232 (S.C. 2018), the Supreme Court of South Carolina clarified that

27

Burkhart is inapplicable to a PCR ineffective assistance of counsel claim.  Indeed, the

Bowman court "flatly reject[ed] the suggestion that a violation of section 16-3-25(C)(1)

precludes a harmless error analysis in all circumstances."  809 S.E.2d at 245.

Moreover, the Supreme Court of South Carolina opined that "[i]n any event,

Burkhart provides no support for Petitioner's claims in this matter, as this is a PCR

claim."  Id. at 346.  Instead, a court must still employ the approach articulated in

Strickland, which requires a showing "that 'there is a reasonable probability that, absent

the errors, the sentencer would have concluded that the balance of aggravating and

mitigating circumstances did not warrant death.'"  Bowman, 809 S.E.2d at 246 (quoting

Jones v. State, 504 S.E.2d 822, 828 (S.C. 1998)).[4]  In other words, while South Carolina

disallows evidence about general prison conditions during the sentencing phase of a

capital trial, this type of evidence is treated as any other evidence for the purposes of a

PCR claim and Strickland analysis.  The Bowman court, which was considering the

appeal of a PCR opinion, illustrated this point by going on to find that "[b]ecause the

evidence of guilt and aggravating factors is overwhelming, there is ample evidence to

support the PCR court's determination that Petitioner failed to establish prejudice" for the

petitioner's counsel's failure to object to questioning about general prison conditions.  In

sum, Burkhart is not controlling in the Strickland prejudice analysis, meaning that the

R&R did not err in failing to find whether or not the PCR court considered Burkhart.

---

[4] While the Bowman court cites Jones for this law, the same language appears in
Strickland.  See Strickland, 466 U.S. at 695 ("[T]he question is whether there is a
reasonable probability that, absent the errors, the sentencer—including an appellate court,
to the extent it independently reweighs the evidence—would have concluded that the
balance of aggravating and mitigating circumstances did not warrant death.").

Wood then makes several objections to the portion of the R&R that found that "Wood neither asserts nor points to any evidence that the jury's indecisiveness resulted from admission of evidence of conditions of confinement or that it was due to any mitigating evidence that the PCR court failed to consider in its analysis." ECF No. 190 at 37. Wood first objects to the R&R's finding that the amount of time a jury spends deliberating is not properly considered in a prejudice analysis. Admittedly, Wood's original argument on this issue was not particularly clear. Wood originally argued that "[t]he PCR judge found that [Wood] could not prove prejudice because of the highly aggravated nature of the crime. This finding, however, fails to consider the jury's protracted deliberations regarding petitioner's sentence." ECF No. 150 at 8 (citation to record omitted). Wood went on to describe the timing of the jury deliberations and concluded that "[t]he jury clearly carefully considered the evidence they received in the case and did not find the issue of sentence to be a quickly resolved issue." Id.

The R&R interpreted this argument to be that the PCR court's prejudice determination was unreasonable because the jury may have found the evidence to be more equally weighted than the PCR court did, as indicated by the jury's lengthy deliberations. But the R&R concluded that this argument failed because "Wood neither asserts nor points to any evidence that the jury's indecisiveness resulted from admission of evidence of conditions of confinement" and therefore Wood "fail[ed] to tie any perceived prejudice to counsel's alleged ineffective act or omission." ECF No. 190 at 37. In other words, the R&R held that Wood failed to show that the prolonged jury deliberations were caused by the evidence about general prison conditions. This appears to misapprehend Wood's argument, which was subsequently clarified in Wood's

objections. Wood does not argue that the jury's indecisiveness _itself_ indicates prejudice. Instead, Wood argues that the PCR unreasonably weighed the evidence by concluding that the aggravating evidence clearly outweighed the mitigating evidence when in fact the length of the jury deliberations suggest that the case was a close one in which the aggravating evidence did not clearly outweigh the mitigating evidence.

The court finds that the PCR court's failure to consider the length of jury deliberations was not a clearly unreasonable application of Strickland. To be sure, some courts have considered the amount of time the jury deliberated as an indication of how close the case was. See Roche v. Davis, 291 F.3d 473, 484 (7th Cir. 2002) (explaining that because "after eight hours of deliberation, the jury was unable to recommend the death penalty . . . whether the aggravating circumstances outweighed the mitigating circumstances in this case was apparently a closer call"). However, Strickland does not require a court to consider the length of jury deliberations but instead requires a court to balance the aggravating and mitigating circumstances. Strickland, 466 U.S. at 695; see also Wiggins v. Smith, 539 U.S. 510, 534 (2003) ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.").

Indeed, none of the cases cited by Wood require a court conducting a prejudice analysis under Strickland to consider the length of jury deliberations. Almost none of the cases cited by Wood involve a Strickland prejudice analysis and instead consider the prejudice of a constitutional error while applying a harmless error analysis. See Parker v. Gladden, 385 U.S. 363, 365 (1966) (considering whether comments made by the court bailiff about the defendant were in violation of the defendant's rights of confrontation and cross-examination and whether the comments prejudiced the defendant); Dallago v.

30

United States, 427 F.2d 546, 558–59 (D.C. Cir. 1969) (considering whether the error of sending certain evidence to the jury was prejudicial); United States v. Varoudakis, 233 F.3d 113, 126 (1st Cir. 2000) (considering whether admission of inadmissible evidence of prior bad act evidence was prejudicial); United States v. Lopez, 500 F.3d 840, 845–46 (9th Cir. 2007) (considering whether the prosecutor's reference to the defendant's post-arrest silence was prejudicial).  Courts have distinguished between a Strickland prejudice analysis and a harmless error analysis.  See Walker v. Martel, 709 F.3d 925, 940 (9th Cir. 2013) ("Strickland bears its own distinct substantive standard for a constitutional violation; it does not merely borrow or incorporate other tests for constitutional error and prejudice."); Siverson v. O'Leary, 764 F.2d 1208, 1215 (7th Cir. 1985) ("Respondents correctly note that with respect to this second [prejudice] requirement, the Strickland analysis differs fundamentally from the traditional harmless error analysis applied to most types of constitutional error.").  Wood does cite to one case in which a court considered the length of jury deliberations in its Strickland prejudice analysis, Stafford v. Saffle, 34 F.3d 1557, 1564 (10th Cir. 1994); however, the court remains unconvinced that the weighing of evidence to determine prejudice, as mandated by Strickland, requires consideration of the length of time for which the jury deliberated.  As such, the court concludes that the PCR court did not unreasonably apply Strickland when it failed to consider the length of jury deliberations while conducting its prejudice analysis.

In a related objection, Wood contends that the R&R improperly faulted Wood for failing to show that the evidence of prison conditions may have affected the jurors' decision-making.  He contends that because inquiry into juror deliberations is prohibited by the Federal Rules of Evidence, the R&R placed "an impossible burden" on Wood.

ECF No. 193 at 4–5.  However, as discussed above, Wood's argument is not premised on the claim that the juror deliberations were prolonged <u>because of</u> the evidence of conditions of confinement.  Instead, Wood argued that the PCR court should have considered the jury's indecisiveness when determining how close the case was. Therefore, whether the evidence about prison conditions affected the jurors' decision-making is irrelevant, and this objection is overruled.

Wood's final objection to the R&R's analysis of Ground Three is that the R&R failed to factor into its prejudice analysis the Solicitor's reliance on prison conditions in his closing argument.  But yet again, Wood has not shown that a court should consider the repetition of improper evidence in a closing argument when conducting a <u>Strickland</u> prejudice analysis regarding the introduction of that evidence.  Wood solely relies on <u>Hyman v. Aiken</u>, 824 F.2d 1405 (4th Cir. 1987), but that case is inapposite.  In <u>Hyman</u>, the Fourth Circuit considered whether an improper jury instruction was harmless error or whether it entitled the death-sentenced defendant to a new trial on the issue of his guilt. 824 F.2d at 1409.  The judge had instructed the jury "that malice is 'presumed from the willful, the deliberate, the intentional doing of an unlawful act without justification or excuse' or from 'the use of a deadly weapon.'"  <u>Id.</u>  The Fourth Circuit found that the instruction may have caused the jury to reasonably believe that that state did not have an affirmative burden to prove malice, and that this shifting of the burden of proof on intent was a denial of the defendant's due process.  In concluding that the jury instruction was not harmless error, the court also noted that the Solicitor relied on the concept of malice presumptions in his closing argument.  <u>Id.</u> at 1410.  However, <u>Hyman</u>'s harmless error analysis was not in the context of a <u>Strickland</u> prejudice analysis, and Wood provides no

reference to a case in which a court considered the prosecution's reliance on improper evidence when conducting a <u>Strickland</u> prejudice analysis. Therefore, the court overrules this objection.

### b. Ground Four

Wood addresses his objections to Grounds Four and Five in the same section. However, the R&R found that Ground Four was procedurally barred from federal habeas review because the state court found that the claim was procedurally barred under state law, and Wood has not expressed any cause for his default. As such, the R&R did not substantively consider Ground Four. Wood does not object to the R&R's finding that Ground Four is procedurally barred; therefore, the court adopts the R&R's finding as to Ground Four and finds that it is procedurally barred.

### c. Ground Five

Ground Five alleges ineffective assistance of counsel for trial counsel's failure to object to various statements in the Solicitor's closing argument. Wood only objects to the R&R's findings on some of those statements—namely, the Solicitor's statements about his decision to seek the death penalty and the death penalty's statutory limitations, the Solicitor's reference to evidence about conditions of confinement, and the Solicitor's comments about the jury "sending a message" with its verdict.

As a reminder, Wood has exhausted his state remedies for these arguments, but they were not raised in his first PCR application. Therefore, they are procedurally defaulted and must fit within the <u>Martinez</u> exception to be properly considered in determining whether Wood is entitled habeas relief. To fit within the <u>Martinez</u> exception, Wood must first show that his underlying ineffective assistance of counsel

claim—that trial counsel's failure to object to the Solicitor's statements constitutes

ineffective assistance of counsel—is substantial. For each of the Solicitor's statements,

the court will summarize Wood's argument in his habeas petition and traverse, review the

R&R's finding, and consider Wood's objections.

### i. Personal Opinion and Statutory Limitations

Wood first argues that trial counsel was ineffective for failing to object to the

Solicitor's statements in his closing argument about the Solicitor's decision to seek the

death penalty and the state's limited ability to seek the death penalty. The relevant

portions of the Solicitor's closing argument are as follows:

> Now, I'm going to tell you again it's a tough decision, and we know it's a tough decision. It was a tough decision - - it's a tough decision for me to ask you to make a tough decision. But responsible people make tough decisions.
>
> . . .
>
> Now, why is the death penalty appropriate in this case? That's a fair question for you to ask me, and that's a fair question that you should ask yourselves. And I'm going to tell you why.
>
> There are mean and evil people in this world who do not deserve to continue to live with us regardless of how well confined they are, and that's why the death penalty is appropriate. And John Richard Wood is such a mean and evil person.
>
> . . .
>
> And the law limits the right of the state to seek the death penalty. We can't seek it in every murder. We can only seek it in certain murders. And we can only seek it in those cases where the murderers are mean and evil people, based on the circumstances of the crime, and that's what we're doing in this case. John Wood is such a person.

ECF No. 43-2 at 81, 83–84.

With regard to Wood's argument about the Solicitor's comments regarding his

decision to seek the death penalty, the R&R held that Wood failed to establish trial

counsel's performance was deficient based on Wood's reliance on State v. Woomer, 284 S.E.2d 357 (S.C. 1981), and State v. Butler, 290 S.E.2d 420 (S.C. 1982), overruled on other grounds by State v. Torrence, 406 S.E.2d 315 (S.C. 1991). Because Wood failed to show that trial counsel's performance was deficient, the R&R concluded that Wood failed to establish a substantial claim of ineffective assistance of counsel, and that the procedural default could not be excused under Martinez.

Wood objects to this holding, arguing that the R&R failed to appreciate the strong similarities between the Solicitor's closing argument and the closing arguments in Woomer and Butler. In Woomer, the Supreme Court of South Carolina vacated a death sentence on direct appeal in part because the Solicitor's closing argument injected his personal opinion into the jury deliberations by discussing his decision to pursue the death penalty in the case. 284 S.E.2d at 359–60. In his closing argument, the Solicitor stated:

> You know, the initial burden in this case was not on you all. It was on me. I am the only person in the world that can decide whether a person is going to be tried for his life or not. I mean I had the same thing you all did. I had to make up my mind in regards to this and under the law, if there is any question about it, you ask the judge, I have to make the first decision as to whether or not a person is going to be tried for the electric chair. If I didn't want him tried for the electric chair, there is no way the Sheriff or anybody else can make it happen. I had to make this same decision, so I have had to go through the same identical thing that you all do. It is not easy.

Id. at 359. The court held because the Solicitor injected his personal opinion, the resulting death sentence may have been influenced by an arbitrary factor in contravention of S.C. Code Ann. § 16-3-25(C)(1). Id.

Similarly, in Butler, the Supreme Court of South Carolina vacated a death sentence on direct appeal due to the Solicitor's improper injection of his personal opinion in his closing argument. In discussing the case, the Solicitor stated:

> First, it has to pass over my desk. I make the decision. People elect me to make the decision as to whether or not I think cases ought to be prosecuted. We don't prosecute all the cases. And I think that's one of the hardest impressions sometimes that we have to make, because people think that I am the mouthpiece of the county or the mouthpiece of the police and that everything that comes along Norman Fogle has got to get up there and holler and advocate a position. That is not correct. I have to use my common sense. So I can share with you just to a small degree this morning how each and everyone of you feel, because as I stated yesterday before that in order for this case to get moving as far as the death penalty was concerned I first had to make that decision, you see, and I have in my opinion, based upon the evidence in this case, overall, decided that if we are going to have a death penalty law on the books that if there were any facts that could ever justify it this case justifies it, justifies it.

Id. at 421. The court, relying on Woomer, held that because the Solicitor injected his personal opinion into the jury's determinations, the death sentence may not be free from the influence of an arbitrary factor. Id.

The R&R found that the closing arguments in Woomer and Butler were sufficiently distinguishable from the Solicitor's closing argument here because the Solicitor here "did not go so far as to compare his role to that of the jury or even emphasize his own decision to seek the death penalty; he merely explained that the State does not choose to pursue the death penalty for every murder charge, so he had to make an affirmative decision to seek death in this case." ECF No. 190 at 47–48. The court agrees with the R&R's assessment. The Solicitor did reference himself when he said "[n]ow, I'm going to tell you again it's a tough decision, and we know it's a tough decision. It was a tough decision - - it's a tough decision for me to ask you to make a tough decision." ECF No. 43-2 at 81. However, the Solicitor did not expand on his "tough decision" like the Solicitors in Woomer and Butler nor did he expand on his reasoning to seek the death penalty. And most importantly, in Woomer and Butler, the Solicitors explained their decision to seek the death penalty as a way to relate to the jury.

They were clearly arguing to the jury that they understood the process of deciding whether the death penalty should be applied to the defendant because they too had to make the decision of whether to seek the death penalty. Here, the Solicitor only acknowledged that it was hard for him to ask the jury to consider the death penalty. His statements simply do not rise to the level of the statements made in <u>Woomer</u> and <u>Butler</u>.

Wood next objects to the R&R's failure to address his argument about trial counsel's failure to object to the Solicitor's comments about the statutory limitations on seeking the death penalty. The Solicitor explained that the state "can't seek [the death penalty] in every murder" but can "only seek it in certain murders." ECF No. 43-2 at 83–84. He went on to explain that the state "can only seek [the death penalty] in those cases where the murderers are mean and evil people, based on the circumstances of the crime, and that's what we're doing in this case." <u>Id.</u> at 84. In his traverse, Wood argued that trial counsel was deficient for failing to object to these statements because they are not true. Wood explained that at the time of Wood's sentencing proceeding, South Carolina's death penalty statute contained eighteen circumstances that made a murder death-eligible, and that many of those circumstances have been broadly interpreted by the Supreme Court of South Carolina. As a result, Wood argued, "the overwhelming majority of murders were death-eligible and the State had broad discretion to seek death in virtually hundreds of cases that year." ECF No. 150 at 21–22. The R&R found this argument to be unconvincing because South Carolina's death penalty statute does limit the cases in which the state may seek the death penalty, making the Solicitor's statements true. As such, the R&R concluded that trial counsel's performance was not deficient and that Wood could not establish a substantial claim of ineffective assistance of counsel.

Wood argues that the R&R "simply fails to address the Petitioner's argument that, in fact, the overwhelming majority of murders, at the time of Petitioner's trial and even now, are death-eligible due to the expansive interpretations afforded statutory aggravators given by the South Carolina Supreme Court." ECF No. 193 at 7–8. Yet the R&R summarizes Wood's argument and cites to the portion of Wood's traverse that contains his argument. ECF No. 190 at 45 (citing ECF No. 150 at 21–22). Therefore, the R&R clearly did consider Wood's argument and simply found it unavailing.

Moreover, even if the majority of murders were death-eligible in South Carolina at the time of Wood's sentencing trial, this fact does not conflict with what the Solicitor told the jury. As the R&R explained, South Carolina's death penalty statute limits the cases in which the state may seek the death penalty. See S.C. Code Ann. § 16-3-20(B), (C)(a). The Solicitor did not claim that the state can only seek the death penalty on rare occasions or even in the minority of murder cases, as Wood's argument seems to suggest. Instead, he explained that the state can only seek the death penalty in "certain" murder cases. ECF No. 43-2 at 84. This is legally accurate. And while characterizing death-eligible crimes as ones "where the murderers are mean and evil people" is not legally precise, see ECF No. 43-2 at 84, the characterization is not so drastic as to misstate the law. Therefore, the court overrules Wood's objections regarding trial counsel's failure to object to these comments in the Solicitor's closing argument.

### ii. Evidence about Conditions of Confinement

Wood also alleges that trial counsel's failure to object to reference to the evidence about conditions of confinement in the Solicitor's closing argument constituted ineffective assistance of counsel. In his closing argument, the Solicitor stated

Now, you and I may think going to prison for life is serious business. But that's not the issue. The issue is, is going to prison for life serious business for John Richard Wood? Are we really doing anything to John Richard Wood?

Going to prison is like being in a big city - - in a little city. You've got a restaurant. You've got a canteen. You've got a medical center. You've got a gymnasium. You've got fields to work in. They give you clothing. You get contact visits with your family. You've got T.V. You play cards and games. You've got a social structure. You've got freedom of movement. It might be limited, but you've got freedom of movement. Thirty or forty acres to live in. Watch ball games on the T.V. You go to school. And you do all of those things that you want to. You may not have a car to drive around, and they may limit your travel. And your standards may not be as high as what you're used to. But based on what John Richard Wood was doing, prison is just about going to be a change of address and nothing more.

He will see his baby every weekend, and that baby will sit on his lap.

ECF No. 43-2 at 88–89.

The R&R held that Wood failed to demonstrate a substantial claim of ineffective assistance of counsel for trial counsel's failure to object to this argument. The R&R first stated that "[i]n its discussion above regarding Ground Three, this court determined that the PCR court did not unreasonably err in its consideration of this standard [about the inadmissibility of evidence on general prison conditions] under Strickland and its resulting finding that trial counsel's failure to object to evidence of prison conditions did not prejudice Wood." ECF No. 190 at 51. The R&R went on to explain that "Wood has not shown that the evidence of conditions of confinement presented during the sentencing phase was impermissible. Thus, the court cannot find that the Solicitor's comments on this topic in his closing statement were based on inadmissible evidence." Id.

In his objections, Wood first argues that the R&R erroneously held that Wood did not show that evidence of confinement conditions was impermissible during sentencing

proceeding. Wood claims that the PCR court "found that the statements were, in fact, impermissible," and that the Magistrate Judge cannot second-guess that finding. ECF No. 193 at 8. It is unclear to the court what exactly Wood means by "statements." If he is referring to statements made during the closing argument about general prison conditions, the PCR court did not consider these statements, so the PCR court could not have found them to be impermissible. Wood did not raise this argument until his second PCR application, so the order on his first PCR application does not address the permissibility of statements during the Solicitor's closing argument. To the extent that Wood is referring to some other statement, his argument is not specific enough for the court to determine what statement to which he is referring. To the extent that Wood means "evidence" instead of "statements," the court addressed that argument in its consideration of Wood's objection to the standard of review. Therefore, this objection is overruled.

Wood also argues that the R&R incorrectly found that trial counsel was not deficient for failing to object to the Solicitor's reference to evidence about prison conditions because he may have had some strategic reason for doing so. The R&R found that "it would not be unreasonable for Wood's trial attorney, who had the benefit of making his argument after the solicitor, to choose not to object to the solicitor's comments, but instead to take the opportunity to respond and have the last word on the subject before the jury deliberated." ECF No. 190 at 53. Wood claims that this finding is erroneous because at the PCR hearing, Wood's trial counsel "characterized the testimony as 'devastating to [Wood's] case,' and testified he did not have any strategic reason for

failing to object." ECF No. 193 at 8 (quoting ECF No. 44-4 at 65–71; ECF No. 44-5 at 9).

As an initial matter, it is important to distinguish between counsel's failure to object to the <u>introduction</u> of evidence about conditions of confinement and counsel's failure to object to the <u>reference</u> to that evidence in closing argument. Most of the testimony from the PCR hearing cited by Wood relates to trial counsel's failure to object to the <u>introduction</u> of evidence about general prison conditions. <u>See</u> ECF No. 44-4 at 67–71 (discussing the testimony of Slight and Aiken); ECF No. 44-5 at 9 (discussing the introduction of testimony about general prison conditions and trial counsel's failure to object to the testimony). The strategy behind trial counsel's failure to object to the introduction of evidence could be different that the strategy behind trial counsel's failure to object to reference to that evidence during a closing argument. This is especially true given trial lawyers' general reluctance to object during a closing argument.

Nevertheless, trial counsel did admit at the PCR hearing that he did not have a strategic reason for failing to object during the Solicitor's closing argument. After reviewing the portion of the Solicitor's closing argument in which the Solicitor discussed general prison conditions, trial counsel was asked "[a]s far as failure to object to the closing arguments, did you fail to object to this information for any strategic reason?" ECF No. 44-4 at 65–66. Trial counsel responded, "no." <u>Id.</u> Therefore, trial counsel did explicitly testify that his failure to object was not strategic.

However, the Magistrate Judge cannot be faulted for her failure to reference this testimony because Wood did not cite to this or any other portion of the record in his traverse to support his argument that trial counsel did not have a strategic reason for

failing to object. Instead, he summarily argued that "[t]rial counsel's failure to object to these arguments was objectively unreasonable." ECF No. 150 at 25. As such, as the R&R concluded, he provided no evidence in his argument before the Magistrate Judge that trial counsel's decision not to object was not strategic or reasonable. It is not the Magistrate Judge's job to comb through thousands of pages of the record to find support for Wood's arguments.

Moreover, the issue of whether trial counsel's failure to object was strategic is not as clear cut as trial counsel's initial testimony may suggest. On cross-examination at the PCR hearing, trial counsel was directed to the portion of the Solicitor's closing argument in which the Solicitor generally described prison in a manner that seemed favorable. ECF No. 44-5 at 4. Trial counsel testified that "I read that, and while I certainly think that that's bordering on - - I'm not even real sure I'd object to it if it happened today." Id. Trial counsel was then asked if it was possible that he did not object because the defense had introduced Aiken's testimony about prison and Wood's vulnerability to predator groups. Id. at 5. Trial counsel responded that he was unsure, explaining that "[r]eading this today I do not recall having that state of mind just described" but "[o]n the other hand, if they were making this argument because it was in response to some testimony, then just so be it." Id. Trial counsel stated that "I don't believe I was sitting there thinking that that argument is being made and is admissible because it's responsive to testimony." Id. Then in conclusion, trial counsel was asked "if you do not recall that though, if in fact that testimony had been elicited, is that the kind of thing you would say, well that's borderline, I'm not going to object to that directly responsive stuff we put out?" Id. Trial counsel responded, "Well, like I said a moment ago, I'm not really sure

I'd object to it right now." Id. This testimony indicates that trial counsel's failure to object could have been strategic, given both his inability to recall his state of mind during this portion of the closing argument as well as the fact that he was unsure whether he'd object to the argument now.

To be sure, in order to show that counsel's conduct does not fall "within the wide range of reasonable professional assistance[,]" a "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). However, trial counsel's testimony about his strategy, or lack thereof, alone does not convince this court that trial counsel's performance was unreasonable. Instead, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. The R&R considered the reasonableness of trial counsel's performance, holding that "Wood has not offered evidence suggesting counsel's decision not to object was not strategic or reasonable." ECF No. 190 at 53 (emphasis added). The R&R explained that "[i]t would not be unreasonable for both sides to refer to [evidence about conditions of confinement] to support their closing arguments" because both sides presented evidence about conditions of confinement. Id.

As an initial matter, Wood did not object to the R&R's reasonableness determination, but in any event, the court agrees with the R&R's reasonableness assessment. "'Deficient performance' is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." Griffin v. Warden, Maryland Corr. Adjustment Ctr., 970 F.2d 1355, 1357

(4th Cir. 1992). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. At the time of closing arguments, evidence about general prison conditions from both sides had been admitted without objection. Because the evidence was already admitted, the court agrees with the R&R that it would not be unreasonable for trial counsel to not object to the Solicitor's reference to the evidence. Indeed, the court "must be highly deferential in scrutinizing [trial counsel]'s performance and must filter the distorting effects of hindsight from [its] analysis." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000). In hindsight, and with the benefit of subsequent and additional South Carolina case law opining on the impropriety of evidence on general prison conditions, a different conclusion may be warranted. But examining trial counsel's performance at the time of Wood's trial and without the benefit of hindsight, as Strickland requires, the court simply cannot conclude that trial counsel's performance was unreasonable.

Wood also objects to the R&R's finding that Wood was not prejudiced by the introduction of evidence about confinement conditions because trial counsel remarked on the conditions as well. Wood argues that this finding does not address the prejudice of the introduction of the evidence in the first place. While this objection relates to the prejudice of "the introduction of this evidence [on conditions of confinement]", ECF No. 193 at 8, the court interprets this objection to apply to the mention of the conditions of confinement in the Solicitor's closing argument. The objection is brought under Ground Five, which relates to the Solicitor's closing argument, and Wood argues that he "had the

44

right to respond to the State's arguments on this issue," further evincing that this objection relates to the closing argument and not the introduction of the evidence through witnesses. ECF No. 193 at 8.

The R&R made no findings about the prejudice of trial counsel's failure to object to the discussion of this evidence during the Solicitor's closing argument. In considering whether Wood has a substantial ineffective assistance of counsel claim, the R&R found that Wood did not establish that his trial counsel's performance was deficient. ECF No. 190 at 53 ("Accordingly, the court finds no reason to set aside the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" (quoting Strickland, 466 U.S. at 689)). Therefore, the R&R did not reach the question of whether Wood was prejudiced by trial counsel's failure to object. As such, this objection is overruled.

### iii. Send a Message

Wood next alleges that trial counsel's failure to object to the portion of the Solicitor's closing argument about "sending a message" to the community constituted ineffective assistance of counsel. That portion is as follows:

> Now, in closing, let me tell you one other thing. You have been intrusted [sic] by society, by our system, you twelve have been intrusted [sic] as representatives of the community to determine what the appropriate sentence is under the facts of this case. And you know this case now as well as anyone involved it [sic] and anyone in the community. So no one can question your judgment because you have all the facts. And it is your decision and it will be your decision, and you will speak for the community when you make that decision. And whatever decision you make, it will ring like a bell outside this courthouse. It will ring like a bell to all of those who will listen and all of those who are listening. And I urge you on behalf of the state of South Carolina and the people of this community to let that bell ring, to let them know that anyone who is involved in the killing of a law enforcement officer in the line of duty who is there to protect the rest of us,

> that such conduct will not be tolerated and will receive the ultimate punishment under our law.

ECF No. 43-2 at 91–92. The R&R found that Wood did not show that this underlying ineffective assistance of counsel was substantial because trial counsel's decision to not object may have been strategic, meaning that trial counsel's performance was not deficient. The R&R explained that if trial counsel had objected, he would have both highlighted the comment and forfeited the opportunity to respond to the comment in his own closing. In doing so, the Solicitor would have had the last word on this issue.

Wood objects to the R&R's finding that trial counsel's decision may have been strategic, arguing that "[t]he state court did not rely on that reasoning in denying Petitioner's claim, and this Court is not empowered to substitute its reasoning." ECF No. 193 at 9. However, the state PCR court did not consider this claim. Wood first raised this argument in his second PCR application, which was not considered on the merits and was instead dismissed as untimely and improperly successive. Therefore, the PCR court did not rely on this reasoning because it provided no reasoning on this issue. Because this argument is procedurally defaulted, the R&R properly considered whether trial counsel's failure to object may have been strategic. As such, Wood's objection on this issue is overruled.

In conclusion, the court overrules all of Wood's objections and adopts the R&R.

### III.  CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R, **GRANTS** the

respondents' motion for summary judgment, **DENIES** Wood's petition for writ of habeas

corpus, and **GRANTS** in part and **DENIES** in part Wood's motion for further factual

development, in accordance with the R&R.[5]

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 9, 2019**
**Charleston, South Carolina**

---

[5] By way of reminder, the R&R granted in part Wood's motion for further factual development for the limited purpose of the R&R considering the testimony of SLED agent Gene Donohue, which was not part of the state record and was attached to Wood's traverse.  Donohue's testimony was provided in the case State v. John Richard Wood and Karen Pittman McCall, which was a separate trial that took place in Anderson County. ECF Nos. 150 at 46; 150-2.  The R&R's partial grant of Wood's motion for further factual development does not implicate the court's holding that Wood's petition is denied.